IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| CHRISTOPHER HOPKINS, #01687080 | § | |
| VS. | § | CIVIL ACTION NO. 6:20cv368 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Petitioner Christopher Hopkins, a prisoner currently confined within the Texas Department of Criminal Justice (TDCJ), filed this habeas action challenging a disciplinary proceeding. The case was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the petition.

For reasons explained below, the Court recommends that the petition be denied, the case dismissed with prejudice, and that Petitioner Hopkins be denied a certificate of appealability *sua sponte*.

**I. Procedural History**

On August 13, 2019, prison officials at the Coffield Unit notified Hopkins of a disciplinary charge: possession of contraband, a violation of rule 16.0 of the Disciplinary Rules and Procedures—and a felony in violation of Texas Penal Code 38.11, prohibited items in a correctional facility. Officials alleged that Hopkins possessed a black LG touch-screen cellphone and a white cellphone charger, (Dkt. #7-1, pg. 4). The offense description/notification document reveals that Hopkins signed the document on the day he was notified. *Id.*

The offense report shows that an officer was conducting a cell search of Cell B-108, where Hopkins was assigned to the bottom bunk. The officer explained that he discovered a cellphone in

1

a book under the sink, a cellphone charger, and a cigarette lighter in the left locker under the bunk assigned to Hopkins. A Sergeant was then notified, who took control of the contraband. *Id*. at pg. 6.

The record demonstrates that prison officials at the Coffield Unit held a disciplinary hearing on August 20, 2019, at 9:30 am. Hopkins was present. Evidence presented included the officer's report and witness testimony. Hopkins explained that the cellphone charger and lighter belonged to his cellmate. Counsel substitute attended, and Hopkins pleaded not guilty—but was found guilty. *Id*. at pg. 4. Hopkins was assessed punishment as follows: (1) loss of forty-five days of recreation, commissary, and telephone privileges, (2) cell restriction for forty-five days, (3) and a line class reduction from L1 to L3. Hopkins lost no good-time credits.

Hopkins filed a Step One grievance, number 2020003979, on September 6, 2019, (Dkt. #7-2, pg. 24-25). He stated that he was appealing the disciplinary case, arguing that statements were falsified and that he was being harassed and retaliated against. After Warden Lane responded, explaining that there was sufficient evidence to support the findings and that it was a valid case, Hopkins filed a Step Two grievance appeal—which was also denied. *Id*. at pg. 27. Hopkins then filed this timely federal petition on June 12, 2020.

## II. Hopkins's Federal Petition

Hopkins maintains that his due process rights were violated when the disciplinary court convicted him without sufficient evidence to support the conviction. He argues that major contraband was found in his cell within "the general area for him and his cellmate," (Dkt. #1, pg. 6). While the contraband was found in his own area of the cell, his cellmate claimed all the contraband. Hopkins asserts that the wrongful conviction cost him his "line class as well as good time," even though there was insufficient evidence. Hopkins insists that he is innocent of the

2

disciplinary conviction because his cell-mate claimed possession of all the contraband. He explains that he is eligible for release onto parole—but only if he maintains his Line 1 custody status.

Moreover, he maintains that his due process rights were violated when he was denied the right to call the searching officer to testify. Had he been allowed to call the officer, he continues, "the officer would have testified that he found nothing in Petitioner's part of the cell" and he would have been found not guilty.

### III. Respondent's Answer

Respondent urges this Court to deny Hopkin's habeas petition, (Dkt. #6). It asserts that Hopkins's punishments do not trigger due process protections and he was not denied a liberty interest. Respondent asserts that Hopkins lost no good-time credits. Moreover, it states that there was sufficient evidence to support the disciplinary conviction and his claim concerning the failure to call the "searching officer" is without merit. Hopkins did not file a response.

### IV. Legal Standards and Analysis

*A. Prison Disciplinary Proceedings and Due Process*

The primary consideration in this case is whether Hopkins has stated or presented the denial of a constitutionally protected liberty interest. He has not. "Federal habeas relief cannot be had 'absent the allegation by a plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States.'" *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000) (quoting *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995)).

The procedural protections of the due process clause are triggered only when there has been a deprivation of life, liberty, or property; because neither Hopkins's life nor property interests are at stake—particularly because his chief complaint is that his due process rights were violated through the disciplinary actions—the pertinent question here is "whether he had a liberty interest

that the prison action implicated or infringed." *Toney v. Owens*, 779 F.3d 330, 336 (5th Cir. 2015); *Richardson v. Joslin*, 501 F.3d 415, 418-19 (5th Cir. 2007).

The Fifth Circuit has held that a variety of prison administrative decisions do not create constitutionally protected liberty interests. Punishment consisting of placement in administrative segregation or the loss of the opportunity to earn good time is not enough to trigger due process protections. *See Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995). Likewise, the imposition of commissary, and recreation as well as cell restrictions do not implicate due process concerns. *See Antone v. Preschel*, 347 F. App'x 45, 46 (5th Cir. 2009) (unpublished); *Gaona v. Erwin*, 224 F. App'x 327, 328 (5th Cir. 2007); *see also Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) ("We agree that Madison's 30[-]day commissary and cell restrictions as punishment are in fact merely changes in the conditions of confinement and do not implicate due process concerns."). An inmate also does not have a protected liberty interest in his custodial classification. *See Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992); *Espinoza v. Benoit*, 108 F. App'x 869, 871 (5th Cir. 2004) (finding that close custody confinement "does not constitute an 'atypical and significant hardship … in relation to the ordinary incidents of prison life.'") (*quoting Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Here, Hopkins's punishment consisting of (1) loss of forty-five days of recreation, commissary, and telephone privileges, (2) cell restriction for forty-five days, (3) and a line class reduction from L1 to L3 do not trigger due process concerns. While Hopkins states that he lost good time, the disciplinary hearing record shows otherwise. *See* Dkt. #7, pg. 4; 10 (disciplinary charge/hearing records).

Ultimately, because none of the deprivations Hopkins received as a result of his disciplinary cases—cell, telephone, and recreation restrictions, as well as a custodial classification

4

change—implicate any protected liberty interests, his claims surrounding his disciplinary cases are without merit because he has not demonstrated a constitutional violation. *See Toney*, 779 F.3d at 336 (the procedural protections of the Due Process Clause are triggered only where there has been a deprivation of a constitutionally protected life, liberty, or property interest).

   *B. Sufficiency of the Evidence and Failure to Call Witness*

   Hopkins further insists that there was insufficient evidence in which to find him guilty in his disciplinary cases. The Court, however, notes that this claims is meritless.

   Federal courts cannot retry every prison disciplinary dispute and can only act where arbitrary or capricious action is shown. *See Martinez v. Young*, 653 F. App'x 835, 836 (5th Cir. 2016) ("The findings of a prison disciplinary hearing should not be disturbed unless they are arbitrary and capricious."); *Stewart v. Thigpen*, 730 F.2d 1002, 1006-07 (5th Cir. 1984) (same). A prison disciplinary decision will be overturned only where there is no evidence whatsoever to support the reached result. *See Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981) ("No *de novo* review of the disciplinary board's factual finding is required, but the courts must consider whether at least the decision was supported by 'some facts,' 'whether any evidence at all' supports the action taken by the prison officials."); *Morgan v. Dretke*, 433 F.3d 455, 456 (5th Cir. 2005) ("The 'some evidence' standard is extremely deferential—we have found a single report or testifying witness sufficient to support an adverse disciplinary decision."); *Flannagan v. Tamez*, 368 F. App'x 586, 588 (5th Cir. 2010) (same).

   An officer's report—even by itself—is sufficient to support a finding of guilt in the prison disciplinary context. *See, e.g.*, *Hudson v. Johnson*, 242 F.3d 534, 536-37 (5th Cir. 2001) ("We hold that Officer M. Goolsby's identification of Hudson in her written report clearly constitutes 'some' or 'any' evidence to support the prison disciplinary board's guilty finding."); *Richards v.*

5

*Dretke*, 394 F.3d 291, 294 (5th Cir. 2004) ("An identification of an accused inmate in a written report by an officer who witnessed the infraction can also be sufficient evidence to support a finding of guilt."); *Stiger v. Warden*, 389 F. App'x 337, 339 (5th Cir. 2010) ("The written incident report and the supporting photograph were sufficient to provide some evidence of Stiger's guilt."). The Fifth Circuit has also observed that, in the context of prison disciplinary proceedings, the Constitution requires due process—not error-free decision-making. *Ard v. Leblanc*, 404 F. App'x 928, 929 (5th Cir. 2010) (citing *McCrae v. Hankins*, 720 F.2d 863, 868 (5th Cir. 1983)). As mentioned, due process protections with respect to prison disciplinary cases are triggered only when there is a protected liberty interest.

Here, the record of the disciplinary case, (Dkt. #7), demonstrates that there was "some" evidence in which to find Hopkins guilty. Specifically, the record illustrates that the offense report and witness testimony were used; the record includes a photograph of both the cellphone and the charger. *Id.* at pg. 12. While Hopkins now contends that the witness statements were "falsified," he also concedes—consistent with the disciplinary records—that the cellphone and charger were found in his own "area" of his prison cell.

Hopkins next argues that his due process rights were denied because his request to call Officer Akindale, the searching officer who discovered the contraband, during his disciplinary hearing. He insists that had Officer Akindale been called, he would have testified in his favor and he would not have been found guilty.

With respect prison disciplinary proceedings, due process requires that a prisoner be provided: (1) advance written notice of the charges, at least 24-hours beforehand, (2) the opportunity to call witnesses and present documentary evidence in his defense, and (3) a written statement of the evidence relied on and the reasons for the disciplinary action taken. *See Wolff v.*

*McDonnell*, 481 U.S. 539, 563-70 (1974); *Martinez*, 653 F. App'x at 836. A prisoner must also demonstrate that he was prejudiced by any due process violation. *See Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) (holding that prisoner's claim failed because he did not explain how he was prejudiced).

Here, Hopkins does not explain how he was prejudiced by the failure to call Officer Akindale during his hearing. Given the evidence against Hopkins—witness statements corroborating the offense report and that the contraband was found in his own personal locker inside his cell—Hopkins has not shown that he was prejudiced by the failure to call Officer Akindale. In other words, Hopkins failed to demonstrate that the outcome would have been different had Officer Akindale testified. Crucially, the disciplinary hearing record illustrates that Hopkins requested one witness to testify—his cellmate, Christopher Gray, (Dkt. #7-1, pg. 8). This claim is without merit and should be dismissed.

*C. Parole*

Finally, Hopkins asserts that he cannot be granted parole because of the reduction in his Line Classification, or custodial classification. He states that he can only be granted parole if he maintains his L1 classification, which he held before the disciplinary infraction.

Hopkins has no constitutional right to release onto parole. It is well-settled that a state prisoner does not have a federal constitutional right to early release onto parole. *See Greenholtz v. Inmates of Neb. Penaland Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *Orellena v. Kyle*, 65 F.3d 29, 31-32 (1995); *Pohl v. Livingston*, 241 F. App'x 180, 181 (5th Cir. 2007) ("This court has determined that Texas law does not create a liberty interest in parole that is protected by the Due Process Clause.").

7

The decision to grant parole or deny parole is discretionary under Texas law—and the Texas parole statutes, both past and present, do not create a protected liberty interest which would then implicate constitutional considerations. *See Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997); *Allison v. Kyle*, 66 F.3d 71, 74 (5th Cir. 1995).

Here, as mentioned, Hopkins did not lose good time. His reduction in line class presents no liberty-interest violation. He has not identified a constitutional violation, which is fatal to his habeas petition. "Federal habeas relief cannot be had 'absent the allegation by a plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States.'" *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000) (quoting *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995)).

## V. Certificate of Appealability

A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, under 28 U.S.C. § 2253(c)(1), he must first obtain a certificate of appealability ("COA") from a circuit justice or judge. *Id.* Although Petitioner has not yet filed a notice of appeal, the court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the

petitioner need only show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The Supreme Court recently emphasized that the COA inquiry "is not coextensive with merits analysis" and "should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck*, 137 S. Ct. 773 (quoting *Miller-El*, 537 U.S. at 336). Moreover, "[w]hen the district court denied relief on procedural grounds, the petitioner seeking a COA must further show that 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012)).

Here, Hopkins failed to present a substantial showing of a denial of a constitutional right or that the issues he has presented are debatable among jurists of reason. He also failed to demonstrate that a court could resolve the issues in a different manner or that questions exist warranting further proceedings. Accordingly, he is not entitled to a certificate of appealability.

**RECOMMENDATION**

For the foregoing reasons, it is recommended that the above-styled petition for a writ of habeas corpus be denied and that the case be dismissed, with prejudice. It is further recommended that Petitioner Hopkins be denied a certificate of appealability *sua sponte*.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and

recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 16th day of May, 2023.

*K. Nicole Mitchell*
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE